UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Christina Lynn Bobe,<br><br>Debtor. | Case No.:    20-20827-ABA<br><br>Chapter:    13<br><br>Judge:    Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

This matter is before the court upon the motions of Christina Lynn Bobe ("Debtor") to modify the claims of BMW Financial Services N.A., LLC ("BMW"). Initially, the Debtor sought to simply modify the BMW's claims by reducing to an amount the Debtor believed was due. But after BMW provided further support for its claims, the Debtor argued that she negated the *prima facie* validity of the claims afforded to BMW under Rule 3001(f), thereby reverting the burden back to BMW to prove the validity of its claims. But then the Debtor argued that because BMW violated Rule 3001(a) and (c), BMW should be precluded from presenting any further evidence, effectively making it impossible for BMW to prove its claims, and ultimately, resulting in a disallowance of the claims. The Debtor also requests that the court award reasonable expenses and attorney's fees pursuant to Rule 3001(c)(2)(D)(ii).

For the reasons set forth below, the court grants the motions in part and denies the motions, in part.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

The Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on September 22, 2020. On October 23, 2020, BMW timely filed Claims Nos. 9-1 ("Claim 9") and 10-1 ("Claim 10", collectively with Claim 9, the "Claims") using the Official Form for Proof of Claim for the Claims. Debtor's Chapter 13 Plan was confirmed on January 27, 2021.

On July 21, 2021, the Debtor filed two separate Motions to Modify the Claims (Doc. Nos. 35 and 36) (collectively, the "Motions") seeking to reduce the Claims to only the missed monthly payments under the leases with BMW. BMW filed responses on August 12 and 16, 2021 (Doc. Nos. 37 and 38). The Debtor replied on August 19, 2021 (Doc. Nos. 39 and 40). BMW filed a Supplemental Certification on August 19, 2021 for Claim No. 10-1 (Doc. No. 41) ("Claim 10

Supplement"). Prior to the hearing on September 28, 2021, the court directed BMW to submit any further evidence in support of its Claims by September 14, 2021. The Debtor could respond by September 21, 2021. BMW untimely filed a Supplemental Certification on September 15, 2021 (Doc. No. 43) ("Claim 9 Supplement"). The Debtor did not file any response or object to the untimeliness of the supplement at the hearing on September 28, 2021.

Given the lack of opposition and further, as the court finds no prejudice in considering same, the court considered the untimely submission. At the conclusion of the hearing, the court took the matter under advisement, and it is now ripe for consideration.

## FINDINGS OF FACT

On August 20, 2016, the Debtor entered into a closed end motor vehicle lease agreement with BMW for a 2016 BMW 550i vehicle, with a term of 36 months and a scheduled maturity date of August 20, 2019. This lease is the subject of Claim 10 ("Claim 10 Lease"). The parties do not dispute that the Debtor returned the 2016 BMW 550i approximately one year early, in August 2018. The Debtor admits that she missed monthly payments that were due under the Claim 10 Lease (Doc. No. 36).

In addition, on December 27, 2017, Debtor also entered into a closed end motor vehicle lease agreement with BMW for a 2018 BMW X6 vehicle with a term of 36 months and a scheduled maturity date of December 27, 2020. This lease is the subject of Claim 9 ("Claim 9 Lease"). The 2018 BMW X6 was timely returned to BMW within the deadline set forth in the lease however, the parties dispute whether it was returned under the mileage agreed upon under the lease. The Debtor admits that she missed payments that were due under the Claim 9 Lease (Doc. No. 35). BMW filed a Motion for Relief from Stay for the 2018 BMW X6, which motion was granted April 20, 2021 (Doc. No. 33).

The Debtor filed a voluntary Chapter 13 petition on September 22, 2020 (Doc. No. 1). On Schedule F to her Bankruptcy Petition she listed BMW as a creditor with an undisputed, noncontingent liquidated unsecured claim associated with the Claim 9 Lease in the amount of $18,452. What is more, on Schedule F to her Bankruptcy Petition she listed BMW as a creditor with an undisputed, noncontingent liquidated unsecured claim associated with the Claim 10 Lease in the amount of $22,894.

On October 20, 2020, BMW filed Claim 9 asserting a claim against Debtor's estate in the amount of $62,479. The purported basis for the claim was the balance remaining as a result of the rejected lease agreement. The only attachments to Claim 9 were a Limited Special Power of Attorney, which authorized AIS Portfolio Services, LP ("AIS") to service claims on behalf of BMW, and the Claim 9 Lease. BMW did not check off the box on Claim 9 indicating that the amount of the claim included interest or other charges and fees. BMW also did not include a statement of any interest, fees, or other expenses.

Then, on October 23, 2020, BMW filed Claim 10 asserting a claim against Debtor's estate in the amount of $22,893. The purported basis for the claim was "Lease Agreement – Deficiency Balance." Similarly, the attachments to Claim 10 included a Limited Special Power of Attorney between AIS and BMW, and the Claim 10 Lease. Also included was an Original Deficiency Proof of Claim Attachment - Pre-Petition Repossession ("Deficiency Proof"). The Deficiency Proof included account balance and sale details that stated that the principal balance prior to sale was

$67,764, and subtracted the total sale proceeds of $45,250, a $375 cost of sale fees and $4 in miscellaneous fees for a final deficiency balance of $22,893. BMW checked off the box on Claim 10 indicating that the amount of the claim included interest or other charges and fees. There were no other documents included.

The Debtor' Motions originally sought to limit the Claims to the amounts she asserted were the missed monthly lease payments. Then, after BMW responded, providing further evidence of its Claims, the Debtor argued that BMW violated Rule 3001(a) and (c) and therefore should be precluded from presenting any evidence originally omitted from the Claims. BMW then filed further supplements to the Claims, Doc. Nos. 41 and 43, which further explained the calculation of the amounts due.

In its Claim 9 Supplement, BMW included an itemization of the charges and fees included in its claim of $62,479 broken down as follows: (1) the residual value of the vehicle of $45,258, (2) the unpaid monthly payments of $14,377, (3) sales tax of $2,998, (4) late charges of $125, and (5) additional charges of $125, and an unearned credit of $405. BMW explained that the high balance reflected that the Debtor was responsible for the vehicle, in addition to the lease payments, prior to the termination of the lease. This amount was calculated in accordance with paragraph 23 of the Claim 9 Lease as it applied to early termination of the lease. *See* Doc. No. 43, paragraphs 3 and 8.

***HOWEVER***, more importantly, BMW further recognized after the filing of the original proof of claim, that because the vehicle was timely turned in (rather than an early termination), paragraph 30 rather than paragraph 23 of the Claim 9 Lease applied and the actual balance now due under the Claim 9 Lease was **$16,785**, broken down as follows: (1) $350 disposition fee, (2) $14,377 in unpaid monthly payments, (3) $767 in excess mileage fees, (4) $125 in late charges, (5) $125 returned item fee, and (6) $1,039 pro-rated lease ext. payment. *See* Doc. No. 43, paragraph 10. The Debtor did not dispute the calculations as determined through the application of the Claim 9 Lease provisions.

In its Claim 10 Supplement, BMW included an itemization of the charges and fees included in its claim for the amount of $22,893 broken down as follows: (1) $12,669 in unpaid monthly payments, (2) $454 in late charges, (3) $100 in return item fees, (4) $8,865 in the amount by which the Adjusted Lease Balance exceeds the Realized Value of the Vehicle, (5) $425 in repo fees, (6) $160 transport fees, (7) $80 in recon fees, (8) $125 sale fee, (9) $10 promo fee, and (10) a $4 miscellaneous fee. BMW avers that all these fees were calculated in accordance to Paragraphs 26, 23(e), and 30 under the Claim 10 Lease. *See* Doc. No. 41, paragraph 7. The Debtor did not dispute the calculations as determined through the application of the Claim 10 Lease provisions.

What is more, at the hearing on September 28, 2021, Debtor through her attorney conceded that she could dispute that she owes $14,377 in missed payments for Claim 9 and $12,699 in missed payments for Claim 10. The Debtor also ddi not dispute the $379 in fees itemized in Claim 10.[1] The Debtor made no challenge to the terms of the leases, the enforceability thereof, or the right to assess the charges provided for thereunder. Likewise, the Debtor provided no basis for her position that she would be responsible for the missed monthly payments only and not for any other payments, fees, and/or charges expressly provided for under the leases.

---

[1] *See* Trial Recording ("TR") at 22:45 min.

## DISCUSSION

The Debtor first sought to simply modify the Claims by reducing the amounts claimed down to what she believed was due for missed monthly payments. But after BMW provided support for its claims, the Debtor argued that she had negated the *prima facie* validity of the Claims afforded to BMW under Rule 3001(f), thereby reverting the burden back to BMW to prove the validity of the Claims.  But at the same time, the Debtor suggested that as a result of the BMW's alleged violation of Rule 3001(a) and (c), BMW should be precluded from presenting any further evidence, effectively making it impossible for BMW to prove its claims and ultimately, resulting in a total disallowance of the Claims. The Debtor also requested reasonable expenses and attorney's fees pursuant to Rule  3001(c)(2)(D)(ii).

Under section 502(a), a claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Rule 3001 controls the procedures for filing a proof of claim. "The purpose of Rule 3001 is to provide the debtor with enough information 'so that a [d]ebtor may identify the creditor and match the creditor and the amount of the claim with the claims scheduled by the [d]ebtor.' *In re Hughes,* 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)." *In re Alessi*, No. 11-25686 MBK, 2012 WL 1072214, at *1 (Bankr. D.N.J. Mar. 29, 2012). A claim that is properly executed and filed "constitutes prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). To overcome the *prima facie* validity, the objecting party has the burden "to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *In re Allegheny Int'l, Inc*., 954 F.2d 167, 173 (3d Cir. 1992). The objecting party needs to present sufficient evidence that negates any essential portion of the claim. *Id.* at 173–174. Should the objecting party provide such evidence, the burden then shifts back "to the claimant to prove the validity of the claim by the preponderance of the evidence." *Id.* at 174. One way a debtor can rebut the *prima facie* validity is to show that the claimant has not provided the proper supporting documentation required by Fed. R. Bankr. P. 3001. *Alessi*, 2012 WL 1072214, at *1.

### 1.  BMW's Claims Satisfy Fed. R. Bankr. P. 3001(a)

Fed. R. Bankr. P. 3001(a) provides:

**(a) Form and content**

> A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

*Id.*

Without question, BMW, in providing its written statement regarding Claim 9 and Claim 10, used the Official Form and attached the leases. However, the Debtor argues that because BMW's Claims did not include any summaries or payment history in support thereof, Claim 9 and Claim 10 do not substantially conform to the Official Form that instructs filers to attach such documents. Therefore, the Debtor contends, the Claims must be disallowed. The court disagrees.

Proofs of claims are a "written statement" setting forth a creditor's claim. Courts have typically construed Rule 3001(a) according to its plain meaning, acknowledging "that a proof of

claim need only conform substantially to the appropriate official form. It need not conform exactly." *In re Dove-Nation*, 318 B.R. 147, 151 (B.A.P. 8th Cir. 2004). Moreover, the court agrees that full compliance with the Official Form "has never been required for allowance of a claim. Rule 3001(a) provides that a proof of claim need only 'conform substantially' to the appropriate form. Fed. R. Bankr. P. 3001; . . . These principles support the conclusion that a creditor's mere failure to fully comply with Rule 3001 and [the Official Form's] documentary requirements does not form the basis for objecting to, or disallowing, a claim." *In re Burkett*, 329 B.R. 820, 828 (Bankr. S.D. Ohio 2005) (citations omitted). *See also In re Alessi*, No. 11-25686 MBK, 2012 WL 1072214, at *2 (Bankr. D.N.J. Mar. 29, 2012) (acknowledging that under Rule 3001(c) (to be discussed further below), "a creditor's mere failure to fully comply with the documentary requirements in 3001(c) does not provide a basis for objecting to, or disallowing, a claim.") (quoting *In re Moreno*, 341 B.R. 813, 817 (Bankr. S.D. Fla 2006)).

Here, the Debtor could easily identify BMW and match it and the amount of the Claims with the claims she actually and almost identically disclosed on her petition. *See Hughes,* 313 B.R. at 212; *Alessi*, 2012 WL 1072214, at *1. So, the purpose of Rule 3001 has been achieved. Along with that, BMW utilized the Official Form for its Claims and provided a written statement as to its Claims. It attached the leases that gave rise to the basis of the Claims as well as the basis for standing to file the Claims. Without doubt, the Claims substantially, although not exactly, conform with the Official Form as required by Rule 3001(a). Since the purpose of Rule 3001 has been achieved and exact conformity is not required, there is no basis for disallowance of the Claims for a violation of the Rule. The Claims satisfy Rule 3001(a).

## 2.   BMW's Claims Under Fed. R. Bankr. P. 3001(c)(2)(A)

The Debtor argues that the Claims do not comply with Rule 3001(c)(2)(A) as no itemized statements of the payments, charges and fees were originally filed with the Claims, and as a result, the *prima facie* validity of the Claims is not met under Rule 3001(f). When a proof of claim is based on a writing "a copy of the writing shall be filed with the proof of claim…" and in individual debtor cases, "[i]f, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(c)(2)(A). Thus, a holder of a claim must file an itemized statement with any "additional amounts with sufficient specificity to make clear the basis for the claimed amount." Fed. R. Bankr. P. 3001 Advisory Committee Notes (2011).

Here, the only attachments to Claim 9 were the  Limited Special Power of Attorney and the Claim 9 Lease. As to Claim 10 the only attachments were the Limited Special Power of Attorney, the Claim 10 Lease and the Deficiency Proof. There was no explanation of how the claims were calculated. There were no itemized statements. Just the total amount of the claim was provided. Because the Claims were not originally itemized with sufficient specificity that would make the basis of the Claims clear, BMW cannot enjoy the *prima facie* validity afforded to it under Rule 3001(f).

BMW argues that the attached lease agreements provide for the fees and charges. The court disagrees. Merely attaching a lease agreement providing for additional fees and charges, with nothing more, is insufficient. That does not provide a clear basis for the claimed amount. For

example, one court found that the original proof of claim did not comply with Rule 3001(c)(2)(A) as it did not attach documents in support of its calculations or indicate how fees were incurred. *In re Vega*, No. 15-34014, 2017 WL 2954762, at *2 (Bankr. S.D. Tex. July 10, 2017). *See also In re Constant*, No. 18-21301 (JJT), 2021 WL 4270814, at *2 (Bankr. D. Conn. Sept. 20, 2021) (claim filed by vehicle lessor that only included the lease agreement without itemizing the fees did not comply with Rule 3001(c)(2)(A)). Here, BMW's Claims do not comply with Rule 3001(c)(2)(A), as they only included the lease agreements and not an itemized statement of the missed payments, interest, fees, expenses, or charges associated with them – which the Claims clearly include. Again, BMW cannot enjoy the *prima facie* validity for the Claims afforded to it under Rule 3001(f).

But all is not lost for BMW. Failure to comply with Rule 3001 does not equate to claim disallowance. Indeed, the "vast majority of courts … have held that a creditor's mere failure to fully comply with the documentary requirements in 3001(c) does not provide a basis for objecting to, or disallowing, a claim." *Alessi*, 2012 WL 1072214, at *2 (quoting *Moreno*, 341 B.R. 813, 817). The court agrees. "When a creditor'\'s proof of claim does not comport with Rule 3001, the claim is 'still allowed under [§] 502 of the Bankruptcy code[,] unless the [d]ebtor establishes an exception under [§ ] 502(b).'" *Id.* (quoting *Dove–Nation*, 318 B.R. at 151–152). *See also Moreno*, 341 B.R. at 817 ("The Bankruptcy Code, in particular, § 502(b) sets out the exclusive exceptions for disallowance of a claim. These exceptions do not include disallowance based on a lack of documentation."). Here, the Debtor has provided no other basis for disallowance of the Claims, and certainly no basis for disallowance under section 502 which "provides the exclusive grounds for claims disallowance." *Alessi*, 2012 WL 1072214, at *3.[2]

Nevertheless, there is a consequence of failing to comply with Rule 3001. It is simply that the burden shifts back to BMW as "the ultimate burden of proof remains with the claimant." *Allegheny Int'l, Inc.,* 954 F.2d at 174. While BMW cannot enjoy the *prima facie* validity for the Claims afforded to it under Rule 3001(f), it may "offer additional evidence to carry its burden of persuasion." *In re Henry*, 546 B.R. 633, 635 (Bankr. E.D. Pa. 2016).

### 3.  BMW Has Met Its Burden of Proof

BMW has submitted additional evidence by way of the Claim 9 Supplement and Claim 10 Supplement to carry its burden. The supplements itemize the missed payments, fees and charges associated with BMW's original Claims and set forth the paragraphs of the leases that support the calculations. The Debtor provided no challenge to the calculations or basis therefor.

---

[2]  Citing *Dove–Nation,* 318 B.R. at 153 "("The Bankruptcy Code could not be more clear: a claim, proof of which is filed, shall be allowed unless it falls within one of the exceptions in [§ ] 502(b)."); *Frontier Ins. Co. v. Westport Ins. Corp. (In re Black),* 460 B.R. 407, 416 (Bankr. M.D. Pa. 2011) ("Section 502(b) of the Bankruptcy Code *enumerates an exhaustive list* of reasons for sustaining an objection to a proof of claim, and *it contains no requirements regarding the production of documentation.*") (emphasis added); *In re Moreno,* 341 B.R. at 817; In re *Guidry,* 321 B.R. at 712. An objection to a proof of claim based on an alleged failure to comply with the Bankruptcy Rules must be overruled "unless the objecting party alleges some basis for objecting on grounds that would require disallowance or reduction under [11 U.S.C.] § 502(b)." *In re Shank,* 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004). If a creditor's claim does not fall into one of the statutorily proscribed reasons for excluding or reducing that claim in § 502(b), then that claim shall be allowed. *Dove–Nation,* 318 B.R. at 153." *Alessi*, 2012 WL 1072214, at *3

*In re Umstead*, 490 B.R. 186, 199 (Bankr. E.D. Pa. 2013), the court provided guidance when evaluating validity of claims. The first step is a "mechanical application of Rule 3001(c) and (f). If the proof of claim fails to achieve *prima facie* status after the first step, I consider all of the information in the proof of claim and bankruptcy record (usually the schedules) in a holistic fashion to determine whether it is appropriate to impose the burden on the objector of producing evidence to dispute the validity or amount of the claim..." *Id.*

Here, Claim 9 Supplement and Claim 10 Supplement provide, with sufficient specificity, a clear itemized basis of the missed payments, charges and fees and how they were calculated under the leases. The Debtor had the opportunity to rebut that evidence but declined to do so. The Debtor also did not offer any convincing argument or evidence at the hearing contradicting the evidence presented by BMW. Furthermore, the Debtor's Schedule F, filed with her bankruptcy petition, acknowledges the two undisputed claims held by BMW with amounts almost identical to the amounts set forth in Claim 9 and Claim 10 (after the recalculation performed in the Claim 9 Supplement). The correlation between the Claims and the Claim 9 Supplement and the Claim 10 Supplement and the Debtor's schedules, along with the attached lease agreements, provide a reasonable basis to establish the validity of BMW's Claims by a preponderance of the evidence. *Umstead*, 490 B.R. at 197. Accordingly, BMW has met its burden of proof as to the validity of the Claims.

### 4. The Court Declines to Preclude BMW from Presenting Evidence and Declines to Award Reasonable Expenses or Attorney's Fees.

The Debtor requests that this court preclude BMW from presenting any evidence in support of its claim and award her reasonable expenses and attorney's fees caused by BMW's failure to provide the required information. Rule 3001(c)(2)(D) states that:

> (D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:
>
>> (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>>
>> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D). "The court retains discretion to allow an amendment to a proof of claim under appropriate circumstances or to impose a sanction different from or in addition to the preclusion of the introduction of evidence." Fed. R. Bankr. P. 3001 Advisory Committee Notes (2011). *See also Nicholson v. eCAST Settlement Corp.*, 602 B.R. 295, 302 (Bankr. M.D. Pa. 2019) (court has discretion in granting sanctions). Here, the court declines to afford the Debtor any remedy under this Rule.

It is undisputed that BMW timely filed the Claims. The Debtor conceded that she missed payments and thought that the Claims might be less, even though the Claims ultimately

substantially matched the Debtor's schedules. The Claims were valid as set forth above. But BMW was required to file Claim 9 Supplement and Claim 10 Supplement to better understand how the Claims were calculated. To preclude BMW from presenting the omitted information would result in the Debtor not understanding the claims that she recognized as valid on her Schedule F to her petition. Moreover, the omitted evidence was harmless, particularly here where the Debtor admitted in her own schedules that BMW possessed undisputed, noncontingent liquidated unsecured claims ultimately in the amount of the Claims. She wanted to know how BMW got to its final calculation and BMW provided the information. Where's the harm in allowing  support for a claim already deemed undisputed by the Debtor?

Likewise, the award of reasonable expenses and attorney's fees is unwarranted. Rule 3001(c)(2)(D)(ii) is reserved for egregious situations. *See Nicholson,* 602 B.R. at 302 (finding that because the claimant did respond and try to explain the absence of the required documents, it was a less egregious situation not warranting the award of reasonable expenses and attorney's fees); *In re Snedeker*, No. 5-17-BK-01399-JJT, 2018 WL 3583047, at *4 (Bankr. M.D. Pa. July 25, 2018) (finding that awarding reasonable expenses and/or attorney's fees not to be an appropriate sanction even in the case where creditor *willfully* failed to provide the information). Here, like in *Nicholson*, BMW did respond and provide the necessary information needed to validate the Claims. In addition, there is no evidence that BMW acted egregiously in filing the claims or defending the Motions. There is also no evidence, or even an assertion, that the Debtor sought a clarification of the amounts due under the Claims from BMW before she filed the Motions. Indeed, failure to do so might make a fee request unreasonable if there was no effort before litigation. In short, the court does not believe that BMW's actions rise to a level of egregiousness that warrants an imposition of sanctions under Rule 3001(c)(2)(D)(ii).


## CONCLUSION

For the reasons set forth above, the Debtor's Motions will be granted in part and denied in part. It is GRANTED to the extent that Claim 9 is disallowed to $16,785 in accordance with the Claim 9 Supplement, and it is DENIED as to all other relief requested.

An appropriate judgment has been entered consistent with this decision.


/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge


Dated: October 29, 2021